627 F.2d 669
 Patricia MORRISON, Blanche Lowe, Rachel Dawkins, George
Black, and all others similarly situated, Appellants,
v.
John J. AYOOB, Hugo R. Iofido, Ross M. Keefer, Lewis E.
Kirchner, Joseph J. Liberati, Stephen Mihalic, Arthur L.
Schlemmer, George L. Shaffer, Milton H. Richael,
Individually and as District Magistrates in the County of
Beaver and their successors in office.
 No. 79-1923.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 20, 1980.*
Decided July 29, 1980.
 
 Thomas C. Reed, Pittsburgh, Pa. (argued), John W. Dineen, Aliquippa, Pa., Neighborhood Legal Services Association, for appellants.
 Thomas W. Pomeroy, Jr. (argued), Ronald S. Krasnow, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellees.
 Before SEITZ, Chief Judge, VAN DUSEN, Circuit Judge, and SHAPIRO, District Judge.**
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 The plaintiffs appeal from an order of the district court denying their request for attorneys' fees under 42 U.S.C. § 1988.
 
 I.
 
 2
 Plaintiffs are a class of indigents residing in Beaver County, Pennsylvania. The defendants are district justices for the county (formerly known as district magistrates). District justices are elected judicial officials, and their jurisdiction includes mainly minor civil matters and petty and/or summary criminal matters. See Pa.Cons.Stat.Ann. tit. 42, § 1515.
 
 
 3
 In March of 1978, the plaintiffs brought this action for declaratory and injunctive relief against the defendants in their official and individual capacities. Plaintiffs challenged the defendants' alleged practice of sending convicted indigents to jail for summary or petty offenses without first affording a right to counsel where Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), so requires. After the action was filed, the plaintiffs' counsel had several meetings with defendants' counsel at the Beaver County court house. Although the record is not entirely clear on this point, it appears that the solicitor for the county court administrator and a representative from the state court administrator attended at least some of these meetings.
 
 
 4
 The plaintiffs' counsel testified without dispute that some time after the action was filed, the President Judge of the Beaver County Court of Common Pleas sent a letter to the defendants through the county court administrator's office instructing them to comply with Argersinger. There is no copy of this letter in the record. In addition, in an unrelated case in which an appeal was taken from a sentence imposed by one of the defendants, the common pleas court held that Argersinger had been violated.
 
 
 5
 While this action was pending, the defendants on the whole began to comply with Argersinger. Thereafter, the defendants moved to dismiss the case as moot. The plaintiffs did not oppose the motion, and the district court granted it.
 
 
 6
 The plaintiffs then moved for attorneys' fees pursuant to 42 U.S.C. § 1988. The district court denied the motion, reasoning that although the plaintiffs were prevailing parties, the defendants, as judges, were entitled to an immunity defense both in their individual and official capacities. This appeal followed.
 
 II.
 
 7
 At the outset, the defendants challenge the district court's conclusion that the plaintiffs are prevailing parties within the meaning of § 1988. Although the district court was rather brief in this regard, we believe that, given the record in this case, its conclusion was correct. In this circuit, the test of whether a person is a prevailing party is whether he "essentially succeeds in obtaining the relief he seeks in his claims on the merits." Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979).
 
 
 8
 Here, the district court necessarily concluded that the defendants had been violating Argersinger prior to this action and stopped after the action was filed. Indeed, it was hard for the court to conclude otherwise. The only evidence of record on the point is that of plaintiffs' counsel, who testified that he had investigated the matter and found violations before the action was filed but few after. The defendants introduced no testimony to contradict this. The district court thus was not clearly erroneous in concluding that the defendants had been violating Argersinger prior to the institution of this action and stopped afterwards.
 
 
 9
 Because the defendants stopped violating Argersinger, the plaintiffs received precisely the relief they wanted. Moreover, the fact that the action was dismissed makes no difference. Under § 1988 the focus is on the relief received rather than any formal procedural labels. See Bagby, supra, 606 F.2d at 414-15; Ross v. Horn, 598 F.2d 1312, 1322 (3d Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980).
 
 
 10
 Defendants contend, however, that the cause of their cessation of conduct was not the filing of this action. It is true that there must be a causal relationship between the action and the ultimate relief received for a person to be a prevailing party under § 1988. See Ross, supra, 598 F.2d at 1322. Nevertheless, the action need not be the sole cause. Where there is more than one cause, the plaintiff is a prevailing party if the action was a material factor in bringing about the defendant's action. To hold otherwise would be inconsistent with the broad remedial purpose of § 1988 because in many cases causation will hinge on the defendant's motivation. To require some stricter standard of causation would mean that the defendant could hide his true motivation behind what seems a plausible alternate justification.
 
 
 11
 Here, the defendants argue that this action played no part in their change of conduct. They point to the letter sent by the president judge and the ruling of a common pleas judge that Argersinger had been violated in a particular case by one of the defendants. Because there apparently was no contact between plaintiffs' counsel and the president judge and because the ruling was in a separate judicial proceeding, they argue that the letter and the ruling were the sole reason they began to comply with Argersinger.
 
 
 12
 The defendants have failed to provide an adequate record basis for their contention. Even assuming the president judge's letter and the other judge's ruling had absolutely no connection with this action, the district court's necessary conclusion that the action was a material factor was not clearly erroneous. The plaintiffs' counsel, the only witness, testified that he communicated with some of the defendants informally prior to filing this action. After this action was filed, counsel for both sides met and discussed the case.
 
 
 13
 This sequence of events strongly suggests that the action was a material factor in bringing about the defendants' change in conduct. Even though the defendants knew about possible violations of Argersinger through informal communications, they did not stop these violations until after this action was filed and their counsel discussed Argersinger with plaintiffs' counsel. On this record, we cannot say that the district court was clearly erroneous.[1]
 
 
 14
 Because the plaintiffs received the relief they requested and because the record supports a finding that this action was a material factor in the defendants' decision to cease the complained of conduct, we conclude that the district court was correct in holding that the plaintiffs are prevailing parties under § 1988.
 
 III.
 
 15
 On appeal, the plaintiffs seek attorneys' fees from the defendants only in their official capacities. Thus we do not consider whether such an award would be appropriate from the defendants in their individual capacities. Moreover, contrary to some suggestions in the briefs, the eleventh amendment is not a bar to an award of attorneys' fees under § 1988. See Hutto v. Finney, 437 U.S. 678, 689-700, 98 S.Ct. 2565, 2573-2578, 57 L.Ed.2d 522, (1978). Thus the question presented is whether the doctrine of judicial immunity bars recovery of attorneys' fees by a prevailing party under § 1988 from judicial officers in their official capacity. We hold that it does not.[2]
 
 
 16
 The doctrine of judicial immunity is a common-law rule, and the Supreme Court has indicated that Congress may abolish the doctrine when it sees fit. See Pierson v. Ray, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1217-1218, 18 L.Ed.2d 288 (1967). We believe that Congress has done so in § 1988.
 
 
 17
 The legislative history of § 1988 indicates that Congress expressly considered judicial immunity and decided to abrogate it under § 1988. The House Report states:
 
 
 18
 Furthermore, while damages are theoretically available under the statutes covered by (§ 1988), it should be observed that, in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy. 17 Consequently awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected.
 
 
 19
 H.Rep.No.94-1558, 94th Cong., 2nd Sess. 9 (1976). Footnote 17 contains a citation to Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the case where the Supreme Court indicated that Congress could abrogate judicial immunity. See generally Supreme Court of Virginia v. Consumers Union, --- U.S. ----, ---- - ----, 100 S.Ct. 1967, 1977-78, 64 L.Ed.2d 641 (1980). We believe that this is sufficient indication that Congress has exercised the choice left to it by Pierson by enacting § 1988.
 
 
 20
 None of the defendants' arguments convince us to the contrary. First, they point out that because the plaintiffs' counsel are from a neighborhood legal services office funded with public money, the effect of attorneys' fees here would be a rebudgeting of state funds by the federal judiciary.
 
 
 21
 To the extent this argument is founded on the eleventh amendment, Hutto, supra, provides the dispositive answer. In addition, in Rodriguez v. Taylor, 569 F.2d 1231, 1244-46 (3d Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), we held that a public interest law firm could recover attorney's fees from the City of Philadelphia under the Fair Labor Standards Act. The defendants have suggested no convincing distinction between that case and this one, and we perceive none.
 
 
 22
 Finally, the defendants argue that there are insufficient funds to meet the amount of fees involved. The district court apparently accepted this argument because it stated that the budgets of the individual defendants' offices were insufficient to satisfy any award. Implicit in this statement is the premise that the award could be satisfied only from the individual budget of the office of each defendant.
 
 
 23
 Such, however, is not the case. "(W)hether or not state agencies are named as defendants in a § 1983 action, (§ 1988) contemplates that the prevailing plaintiff may recover fees from the individual defendants in their official capacities or directly from the state agencies." Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 496 (3d Cir. 1978), cert.denied, 444 U.S. 832 (1979). See Hutto, supra, 437 U.S. 699-700, 98 S.Ct. 2578.
 
 
 24
 Here, as in Hutto and Skehan, there are several possibilities as to how the award could be framed. For example, both the county and the state court administrator arguably could be responsible for the award. Both entered appearances in the district court and actively participated in all phases of the case, factors found to be relevant in Hutto in framing an award. See 437 U.S. at 699, 98 S.Ct. at 2578. The plaintiffs and the defendants have made numerous arguments concerning how the award should be framed. Because the district court proceeded on an erroneous legal premise as to how the award might be framed, we feel it would be better for the district court to consider these arguments in the first instance.
 
 
 25
 We hold that judicial immunity is not a factor to be considered under § 1988. We will remand to the district court to consider in the first instance the proper framing of the award of attorney's fees. We also note that the parties have stipulated the amount of fees and have raised no issue concerning this on appeal. We leave to the district court whether it nevertheless desires to amplify the record to determine the reasonableness of the fee. We also leave open whether the plaintiffs may recover fees in connection with this appeal.
 
 IV.
 
 26
 The order of the district court will be reversed and remanded.
 
 
 
 *
 This determination was deferred pending the Supreme Court's resolution of Supreme Court of Virginia v. Consumers Union, --- U.S. ----, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), because the decision there appealed considered issues presented here
 
 
 **
 Hon. Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The defendants' argument on appeal as to causation is somewhat disingenuous. For example, the motion to dismiss in the district court referred to the case as being "settled." Moreover, in another section of their brief on appeal urging affirmance for other reasons, they state: "Once the problem was brought to the attention of the Pennsylvania Court Administrators office and the local court administrators office, both of these offices helped the plaintiffs to obtain the relief sought."
 
 
 [2]
 A three-judge court reached the same conclusion in Consumers Union v. American Bar Ass'n., 470 F.Supp. 1055 (E.D. Va. 1979). On appeal, the Supreme Court reversed, holding that the state supreme court had been acting in a legislative capacity. The Court expressly did not reach the issue presented here. See Supreme Court of Virginia v. Consumers Union, --- U.S. ----, ---- - ----, 100 S.Ct. 1967, 1977-78, 64 L.Ed.2d 641 (1980)