**Anna SULLIVAN**

v.

**BUREAU OF VOCATIONAL REHABILITATION.**

Civ. A. No. 78–3927.

United States District Court, E. D. Pennsylvania.

Dec. 24, 1980.

Alice W. Ballard, Samuel, Ballard & Hyman, Philadelphia, Pa., for plaintiff.

Elisabeth S. Shuster, Dept. of Justice, Commonwealth of Pennsylvania, Harrisburg, Pa., for defendant.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

In March of 1977, one John Quinn was promoted to a post (psychological services

associate II) in the Pennsylvania Bureau of Vocational Rehabilitation for which Anna Sullivan was also a candidate. Sullivan felt that she was better qualified for promotion than Quinn and hence that Quinn's selection discriminated against her on grounds of gender. She asked her union to file a grievance on her behalf pursuant to the non-discrimination clause of the collective bargaining agreement. The grievance was filed in April of 1977. Two months later, Sullivan, through privately retained counsel, filed a charge of gender discrimination with the Equal Employment Opportunity Commission (EEOC). In the ensuing months, the grievance process and the EEOC inquiry both went forward. Sullivan's counsel's efforts appear to have been a substantial catalyst with respect to the EEOC inquiry, assisting the federal agency in uncovering substantial pertinent information.

On June 30, 1978, District Director Hadfield of the EEOC issued his "Determination"—a three-page opinion which concluded that "there is reasonable cause to believe that the respondent [Pennsylvania Bureau of Vocational Rehabilitation] has engaged in an unlawful employment practice (Section 704(a)) within the meaning of Title VII." The District Director's favorable "Determination" served as a prod to the Pennsylvania Social Services Union (PSSU) to carry Sullivan's grievance forward to arbitration. The arbitral hearing took two days in the spring and summer of 1979. The presentation of Sullivan's case to the arbitrator was handled by counsel for the PSSU, but that presentation was based in major part on (1) the information developed by Sullivan's retained counsel during the EEOC phase; (2) the discovery pursued by retained counsel subsequent to the filing in this court of Sullivan's Title VII claim in November 1978; and (3) retained counsel's extensive pre-arbitral hearing collaboration with counsel for the PSSU.

In February, 1980, the arbitrator sustained Sullivan's grievance, concluding that

Sullivan "was denied a promotion on the basis of her sex" and directing that Sullivan "shall be reclassified as a psychological services associate II as of at least one day previous to the day Mr. Quinn was, with all appropriate back pay, educational benefits and licensing opportunities that accompany the position." [Page 5].

The award of the arbitrator, now final, has resolved in Sullivan's favor all the claims advanced by her in this Title VII proceeding save one: The one claim not met is the subject of the motion for partial summary judgment now to be ruled on. That claim is for counsel fees covering the work done by retained counsel to advance the EEOC inquiry, the arbitration, and the Title VII case in this court. The claim rests on the following language in Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–5(k):

> In any action or proceeding under this title [Title VII], the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs.

The arbitrator's award was a comprehensive adjudication of Sullivan's employment status in her favor. That is to say, she was, in that arbitral proceeding, "the prevailing party," to follow the language of Section 706(k). The further question—the question which is decisive of the pending application for counsel fees—is whether the arbitration in which Sullivan prevailed was an "action or proceeding under this Title" [Title VII].

Sullivan argues two propositions which are uncontestable: the first is that the arbitrator's award was in furtherance of Title VII's objectives. The second is that the Supreme Court, in its construction of Title VII, was at pains, in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), to promote the pursuit of arbitration as a complementary enforcement mechanism which, without prejudice to a Title VII claimant's rights,[1] might fre-

---

1. The Court in *Gardner-Denver* rejected the argument that pursuit of arbitration constituted

an election of remedies fatal to a Title VII

quently lead to the vindication of the rights with an expedition not often available in judicial proceedings.

While these two propositions are uncontestable, they do not of their own force yield the conclusion that an arbitration successfully pursued is an "action or proceeding under" Title VII. In reversing the lower courts' conclusion that one who pursued arbitration and lost was precluded from prosecuting her/his Title VII claim in a federal court, the Court in *Gardner-Denver* emphasized the separateness of the remedies involved:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

415 U.S. at 49–50, 94 S.Ct. at 1020.

■ The fact that these separate remedies are mutually supportive does not, in my view, mean that they may be combined into a single "action or proceeding under this Title" within the contemplation of Section 706(k). The Supreme Court's recent teaching in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) precludes such a result. In that case, the Court of Appeals for the Second Circuit had held, by divided vote, that a Title VII claimant was entitled to counsel fees where the successful adjudicatory process was conducted in the New York State Division of Human Rights and, on review thereof, in the courts of New York. The Supreme Court sustained the judgment of the Second Circuit, notwith-

standing that the favorable adjudication on the merits in the state administrative agency and the state courts left nothing for the federal court to do except rule on the application for counsel fees. But the reason that *Gaslight Club* is an authority adverse, rather than favorable, to Sullivan is that Mr. Justice Blackmun's opinion for the Court places great emphasis on the fact that the New York administrative and judicial proceedings were—not just functionally, but formally as well—an integral part of vindication of the Title VII claim. As Mr. Justice Blackmun's opinion carefully explains, Title VII requires exhaustion of state antidiscrimination mechanisms as a predicate to the pursuit of federal enforcement mechanisms where the state processes are deemed adequate to vindicate Title VII's objectives. See 100 S.Ct. at 2031; *cf. Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 575 (1972). Since New York's anti-discrimination mechanisms meet federal standards, New York's administrative/judicial adjudicatory process is part and parcel of an "action or proceeding" under Title VII.

That the integration of state and federal mechanisms is central to *Gaslight Club* is apparent from the very first sentence of Mr. Justice Blackmun's opinion (100 S.Ct. at 2027):

> This case presents the question whether, under Title VII of the Civil Rights Act of 1964, a federal court may allow the prevailing party attorney's fees for legal services performed in prosecuting an employment discrimination claim in state administrative and judicial proceedings that Title VII requires federal claimants to invoke.

And confirmation is found in Mr. Justice Stevens' concurring opinion (100 S.Ct. at 2035):

---

claim. The Court concluded (415 U.S. at 59–60, 94 S.Ct. at 1025):

> ... that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a

collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim *de novo*. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate. [The Court's footnote 21 is omitted.]

All that needs to be decided is whether an allowance of fees may properly cover the work performed in the administrative proceedings that were a prerequisite to the court action. I agree with the Court's disposition of that issue...

■ The arbitration in which Sullivan prevailed was an enforcement mechanism additional to, not a predicate of, Title VII enforcement and hence was not an "action or proceeding under" Title VII. Wherefore, in an order filed this day, Sullivan's motion for partial summary judgment is DENIED.