663 F.2d 443
 27 Fair Empl.Prac.Cas. 185,
27 Empl. Prac. Dec. P 32,201
Anna SULLIVAN, Appellant,
v.
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF LABOR AND
INDUSTRY, BUREAU OF VOCATIONAL REHABILITATION; James Bonner,
Assistant Director, Field Operations; Anthony Renzi,
Regional Administrator; and John Nolan, District
Administrator, Appellees.
 No. 81-1250.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 17, 1981.
Decided Oct. 26, 1981.
 
 Alice W. Ballard (argued), Samuel, Ballard & Hyman, Philadelphia, Pa., for appellant.
 Leroy D. Clark, Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, William Ng, Justine S. Lisser, (argued), Attys., E. E. O. C., Washington, D. C., for the E. E. O. C., amicus curiae.
 Jack Greenberg, Charles Stephen Ralston, James S. Liebman, New York City, for the NAACP Legal Defense and Educational Fund, Inc., amicus curiae.
 David Wilderman, Pa. Social Services Union, Local 668 SEIU, AFL-CIO, Harrisburg, Pa., for Pennsylvania Social Services Union, Local 668 SEIU, AFL-CIO, amicus curiae.
 Elisabeth S. Shuster (argued), Allen C. Warshaw, Deputy Atty. Gen., Chief, Civ. Litigation, LeRoy S. Zimmerman, Atty. Gen., Harrisburg, Pa., for appellees.
 Richard S. Gebelein, Atty. Gen. of Del., Regina Mullen Small, State Sol., Dept. of Justice, Wilmington, Del., Charles A. Graddick, Atty. Gen. of Ala., Montgomery, Ala., Wilson L. Condon, Atty. Gen. of Alaska, Juneau, Alaska, John Steven Clark, Atty. Gen. of Ark., Little Rock, Ark., Carl R. Ajello, Atty. Gen. of Conn., Hartford, Conn., Tany S. Hong, Atty. Gen. of Hawaii, Honolulu, Hawaii, Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., Warren R. Spannaus, Atty. Gen. of Minn., St. Paul, Minn., Steven Freudenthal, Atty. Gen. of Wyo., Cheyenne, Wyo., for States of Delaware, Alabama, Alaska, Arkansas, Connecticut, Hawaii, Indiana, Minnesota and Wyoming, amici curiae.
 Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether a plaintiff, whose counsel's efforts in prosecuting her Title VII suit were a material factor in her ultimately obtaining the relief sought not in the Title VII action itself, but in an arbitration proceeding, may be awarded attorneys' fees restricted to the Title VII efforts of her counsel.[1] We hold that the district court erred in refusing to authorize attorneys' fees in these circumstances.
 
 I.
 
 2
 In March, 1977, Anna Sullivan, a Rehabilitation Counselor I in the Bureau of Vocational Rehabilitation (BVR) of the Commonwealth of Pennsylvania's Department of Labor and Industry, was passed over for promotion to the position of Psychological Services Associate II in favor of a male co-worker. The next month, Sullivan, believing that she had been discriminated against on the basis of her sex, asked her union, Pennsylvania Social Services Union Local 668, SEIU (the "union"), to file a grievance on her behalf pursuant to the nondiscrimination clause of its collective bargaining agreement with BVR. Two months later, in June, 1977, Sullivan, through privately retained counsel, filed a charge of sex discrimination with the United States Equal Employment Opportunity Commission (EEOC) pursuant to section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(b).
 
 
 3
 During the spring of 1977, the union processed Sullivan's grievance through various stages of the contractual grievance process without success. The union was uncertain as to the strength of Sullivan's grievance because it was unable to obtain from BVR a specific statement of the criteria the Bureau had used in making its promotion decision. When, in July, 1977, the union received a final denial of the grievance from BVR, it ceased activity on the grievance pending the outcome of the EEOC proceedings. App. at 16.
 
 
 4
 In the meantime, the efforts of Sullivan's retained counsel spurred on the EEOC inquiry. Her counsel assisted the EEOC in uncovering substantial pertinent information. See Sullivan v. Bureau of Vocational Rehabilitation, 504 F.Supp. 582, 583 (E.D.Pa.1980). On June 30, 1978, the EEOC concluded that there was reasonable cause to believe that BVR had engaged in an unlawful employment practice under Title VII.
 
 
 5
 The EEOC's determination "served as a prod to the (union) to carry Sullivan's grievance forward to arbitration." Id. at 583. In December, 1978, the union filed a demand for arbitration of Sullivan's grievance. As the union's counsel stated in an affidavit filed in the instant proceeding, which action seeks only attorneys' fees:
 
 
 6
 Ms. Sullivan's case appeared to be meritorious, in large part because of the work performed by (her counsel) during the investigation of Ms. Sullivan's EEOC charge, and because of the EEOC's determination in Ms. Sullivan's favor. Had it not been for (Sullivan's counsel's) development of the record during the EEOC investigation, the Union might well have overlooked the meritorious aspect of the case .... However, the development of the case at the EEOC level pointed out to the Union that there was a strong claim of sex discrimination ....
 
 
 7
 App. at 12.
 
 
 8
 Meanwhile, on November 21, 1978, after receipt of a notice of right to sue, Sullivan commenced the instant action under Title VII and 42 U.S.C. § 1983. During the fall and winter of 1978-79, Sullivan's counsel proceeded with discovery and case preparation in the Title VII action. As a result of her discovery requests, Sullivan's counsel obtained BVR employment records that demonstrated that Sullivan's performance evaluations were superior to those of the male co-worker who was promoted ahead of her. Using these documents and the materials from Sullivan's EEOC file, Sullivan's counsel prepared a case outline detailing each of the claims in the case, and setting out the manner in which she planned to prove the facts supporting each element. In April, 1979, she met with the union's counsel to make this work product available to him as he prepared for Sullivan's arbitration hearing. App. at 27. In addition, since the same witnesses Sullivan's counsel planned to depose in connection with the Title VII action were scheduled to testify in the upcoming arbitration proceeding, Sullivan's counsel, in lieu of taking depositions in the federal suit, worked with the union's counsel to prepare questions for use in examining and cross-examining these witnesses at the arbitration. Id. at 27-28.
 
 
 9
 The arbitration hearing on Sullivan's grievance was held on May 24 and August 3, 1979. The union's counsel acknowledged that "(m)any of (the) documents (used in the arbitration) would not have been immediately available to the Union but for the EEOC investigation and the discovery in the federal civil rights action," and noted that investigative and discovery work by Sullivan's counsel proved invaluable in preparing for the arbitration. Id. at 13. The union's counsel, in examining and cross-examining witnesses at the arbitration, worked directly from the list of questions developed in collaboration with Sullivan's counsel. Id. at 13-14.[2]
 
 
 10
 In February, 1980, the arbitrator sustained Sullivan's grievance, concluding that she had been denied a promotion on the basis of her sex, and ordered that she be retroactively promoted with backpay and associated benefits. The union thereupon filed a petition with the Pennsylvania Labor Relations Board to enforce the arbitral award.
 
 
 11
 The arbitrator's award granted Sullivan all the relief she had sought in her Title VII suit except attorneys' fees. Thereafter, she moved in the district court, where her Title VII action was pending, for partial summary judgment[3] seeking such fees under section 706(k) of Title VII. Sullivan sought attorneys' fees for work done in connection with the EEOC proceedings and the Title VII litigation in federal court, not for work done in connection with the arbitration itself.
 
 
 12
 The district court denied her motion on December 24, 1980. The district court noted that in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court held that attorneys' fees could be recovered under section 706(k) for work done in state administrative and judicial proceedings that were a statutory prerequisite to Title VII relief in federal court. From this, the district court reasoned that because the arbitration in which Sullivan prevailed was an enforcement mechanism additional to, and not required by, Title VII's enforcement scheme, it was not an "action or proceeding under" Title VII within the meaning of section 706(k), and hence attorneys' fees under that section were not available. 504 F.Supp. at 584-85. Because Sullivan had obtained all the other relief she had sought in her suit from the arbitrator, on January 6, 1981, the district court dismissed Sullivan's entire complaint as moot.
 
 II.
 
 13
 The Supreme Court, this court, and other courts of appeals have given section 706(k) a liberal reading, in line with Congress' intent to facilitate the bringing of discrimination complaints. See Carey, supra, 447 U.S. at 63, 100 S.Ct. at 2030.[4] In particular, the courts have stressed that an award of attorneys' fees under section 706(k) and its companion provision, 42 U.S.C. § 1988,[5] is not limited to the situation in which the plaintiff prevails by a judgment in the Title VII action itself, by a favorable resolution of state administrative proceedings, or by a judgment in any other civil rights action. Rather, they have held that attorneys' fees are available whenever a civil rights cause of action ultimately results in the plaintiff's having obtained relief, even when there are several links in the chain of events connecting the claim brought and the relief granted. In Maher v. Gagne, 100 S.Ct. 2570, 65 L.Ed.2d 653, 448 U.S. 122 (1980), for example, the Supreme Court upheld an award of attorneys' fees under section 1988 where the plaintiff's case was settled by a consent decree that gave the plaintiff substantially all the relief she had sought in her complaint. The Court stated:
 
 
 14
 The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.
 
 
 15
 Id. at 129, 100 S.Ct. at 2575.
 
 
 16
 This court has declared that "(w)hether (a plaintiff) is entitled to a fees award should be determined by whether her case acted as a 'catalyst' for the vindication of her constitutional rights." Staten v. Housing Auth., 638 F.2d 599, 605 (3d Cir. 1980). Our decisions have made it clear that a plaintiff can receive attorneys' fees even if the causal link between the civil rights suit and the relief obtained is not as direct as when the case is completely adjudicated in the district court itself or formally settled with the defendants in the context of the civil rights proceeding.
 
 
 17
 In Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980), the plaintiffs filed suit in district court challenging New Jersey's procedure for handling suspected fraud in unemployment benefits. After the suit was filed, New Jersey made changes in its benefit processing system that cured the alleged faults in the system. This action then led to judgment being entered against the plaintiffs. Nevertheless, this court ruled that the plaintiffs might still be entitled to attorneys' fees:
 
 
 18
 (W)e refuse to give conclusive weight to the form of the judgment. In assessing who is a prevailing party, we look to the substance of the litigation's outcome. If the new procedures, which provided much of the relief appellants had initially sought, were implemented as a result of this lawsuit, the appellants were prevailing parties with respect to a portion of their claims (which claims were thereby effectively mooted) irrespective of the judgment entered against them on the balance of their claims.
 
 
 19
 Id. at 1322 (emphasis added; footnote omitted).
 
 
 20
 Similarly, in Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980) (per curiam), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), the plaintiffs' complaint that certain Pennsylvania county district justices were violating criminal defendants' right to counsel was mooted when the justices stopped violating that right after the suit was filed. The district court's finding that the suit was a "material factor" in bringing about the relief sought was upheld on the basis of the connection between the institution of the suit and the cessation of the justices' activity. In doing so, this court observed that the challenged activity terminated only after the plaintiffs' action had been filed and counsel for both sides had conferred.[6] In discussing the question of attorneys' fees under section 1988, the court stated:
 
 
 21
 In this circuit, the test of whether a person is a prevailing party is whether he "essentially succeeds in obtaining the relief he seeks in his claims on the merits." Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979).
 
 
 22
 Defendants contend, however, that the cause of their cessation of conduct was not the filing of this action. It is true that there must be a causal relationship between the action and the ultimate relief received for a person to be a prevailing party under § 1988.... Nevertheless, the action need not be the sole cause. Where there is more than one cause, the plaintiff is a prevailing party if the action was a material factor in bringing about the defendant's action. To hold otherwise would be inconsistent with the broad remedial purpose of § 1988 because in many cases causation will hinge on the defendant's motivation. To require some stricter standard of causation would mean that the defendant could hide his true motivation behind what seems a plausible alternate justification.
 
 
 23
 Id. at 671 (emphasis added; citation omitted).
 
 
 24
 The courts of appeals in other circuits have likewise adopted an expansive view of the causal link that must exist between the Title VII suit and the relief ultimately obtained. In Criterion Club v. Board of Commissioners, 594 F.2d 118 (5th Cir. 1979) (per curiam), the plaintiffs brought a class action on behalf of the black residents of Dougherty County, Georgia, against that county's Board of Commissioners, alleging that the county-wide, at-large system of electing the Board abridged their fourteenth and fifteenth amendment rights. The case never proceeded to trial. Instead, the parties reached an agreement pursuant to which the Dougherty County legislative delegation introduced a bill in the Georgia General Assembly redistricting the county and providing the opportunity for the election of at least two blacks to the County Commission. The bill passed and was signed by the Governor. The district court denied the plaintiffs' application for section 1988 attorneys' fees. The Fifth Circuit remanded the case to the district court with the direction that if the district court found that the legislative changes that occurred were a consequence of the filing of the plaintiffs' suit by way of a compromise or other agreement of the parties, then attorneys' fees should be awarded. Id. at 120.
 
 
 25
 In numerous other cases, even though the plaintiffs obtained no formal judicial relief, "(attorneys') fees were deemed appropriate because plaintiffs' lawsuits were catalysts motivating defendants to provide the primary relief sought." Robinson v. Kimbrough, 652 F.2d 458, at 465 (5th Cir. Aug. 3, 1981). See, e. g., id. at 466 n. 10 (citing cases); Harrington v. DeVito, 656 F.2d 264, 266 (7th Cir. 1981); Young v. Kenley, 641 F.2d 192, 195 (4th Cir. 1981); Gurule v. Wilson, 635 F.2d 782, 791 (10th Cir. 1980), clarified per curiam on rehearing, 649 F.2d 754 (10th Cir. 1981); Smith v. University of N.C., 632 F.2d 316, 347 (4th Cir. 1980); Chicano Police Officer's Ass'n v. Stover, 624 F.2d 127, 131 (10th Cir. 1980); United Handicapped Fed'n v. Andre, 622 F.2d 342, 345-47 (8th Cir. 1980); Nadeau v. Helgemoe, 581 F.2d 275, 279-81 (1st Cir. 1978).
 
 
 26
 Thus, decisions of this court, even without regard to rulings of other courts of appeals, have never held that a plaintiff, in order to be entitled to attorneys' fees, had to be the prevailing judgment-winner in the district court itself. Rather, we have articulated a causal-connection standard whose central inquiry has been variously stated as whether the plaintiff obtained the relief sought "as a result of" the civil rights judicial efforts, Ross, supra, 598 F.2d at 1322, or whether these efforts were a "material factor" in obtaining the relief, Morrison, supra, 627 F.2d at 671. Accordingly, we would be departing from the spirit of principles which we have previously announced if we were to hold that attorneys' fees may not be awarded when a Title VII plaintiff obtains the relief sought through arbitration, rather than through settlement, administrative action, or other change in the defendants' conduct, even though there exists a causal link between the Title VII litigation and the relief obtained. Our decisions have given expression and effect to the congressional intent that "for purposes of the award of counsel fees (under section 1988), parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. " S.Rep.No.94-1011, 94th Cong., 2d Sess. 5, reprinted in (1976) U.S.Code Cong. & Ad.News 5908, 5912 (emphasis added).[7]
 
 
 27
 It should not be surprising that this court's rulings have construed section 1988 to be operative when a causal connection between the action filed and the relief obtained is found. Even prior to the enactment of section 1988, this court had presaged a Sullivan-type situation, albeit in a non-civil rights context, and had ordered attorneys' fees to be paid to plaintiffs even though it was in a collateral proceeding that the plaintiffs had prevailed. Thomas v. Honeybrook Mines, Inc., 428 F.2d 981 (3d Cir. 1970). Indeed, the Senate Report accompanying section 1988 cited Thomas as an example of the type of case in which attorneys' fees were to be awarded.
 
 
 28
 In Thomas, a committee of mine workers, beneficiaries of a union pension fund, sued their union on the ground that the union had failed to pursue mine operators that were delinquent in making contractually required payments into the pension fund. The court noted that although the suit itself did not result in the workers' gaining relief, it "was instrumental in prodding the cautious (union fund) trustees into more aggressive action" against the delinquent mine operators; as a result of the workers' suit, the fund filed a complaint against Honeybrook Mines and ultimately succeeded in recovering the overdue payments. Id. at 984. On these facts, this court held that because the workers' suits forced the union fund trustees to commence actions against the mine operators which resulted in recovery of overdue payments, the workers' counsel fees and expenses incurred in bringing about the trustees' actions were properly payable out of the recovered payments. Id. at 985.
 
 
 29
 The situation in Thomas, where, as we have observed, it was the employees' lawsuit against the union that caused the union in turn to sue and recover from the employers, is analogous to the situation here, even though Thomas was not a civil rights action. In this case, Sullivan's Title VII lawsuit prodded her union to take her case to arbitration against her employer, where relief was ultimately granted. The Senate Report's citation to, and approval of, Thomas as an example of a case in which it was appropriate to award attorneys' fees, indicates that congressional intent would be served by considering a party to have prevailed in a civil rights action even though relief ultimately was obtained in the context of a separate proceeding.
 
 
 30
 BVR's position, adopted by the district court, is that although Sullivan may have prevailed in her collective bargaining arbitration, she was not a prevailing party in an "action or proceeding under" Title VII, inasmuch as an arbitration is not an "action or proceeding under" that title. See 504 F.Supp. at 585. Thus, BVR claims, and the district court held, that the literal requirements of section 706(k) had not been met.
 
 
 31
 But, as we have previously pointed out, Congress and the courts have not given the language of section 706(k) the narrow interpretation espoused by the defendants. As we have discussed, the Senate Report accompanying section 1988 made clear that "parties may be considered to have prevailed when they vindicate rights ... without formally obtaining relief." S.Rep.No.94-1011, supra, at 5, (1976) U.S.Code Cong. & Ad.News at 5912 (emphasis added). Consistent with that expression of intent, the cases that we have discussed above have refused to limit the concept of a prevailing party to parties who actually and literally prevail in the Title VII action or proceeding itself. Those decisions stand for the proposition that the crucial question under sections 706(k) and 1988 is not whether a plaintiff actually prevailed in a Title VII or civil rights lawsuit, but whether the plaintiff may be deemed to have prevailed in the civil rights action because of the causal connection between the suit filed and the relief obtained.
 
 
 32
 Thus, in Ross, supra, the plaintiffs were deemed prevailing parties in their civil rights action concerning the administration of state unemployment benefits even though their relief was obtained through administrative changes which occurred outside the court proceedings and which were made after the initiation of the lawsuit. Similarly, in Morrison, supra, the federal court action the plaintiffs had brought challenging the practice of the county district justices was dismissed as moot because after the complaint had been filed the justices changed their practice to accord indigent defendants a right to counsel. Nevertheless, attorneys' fees were awarded the plaintiffs as "prevailing parties" within the meaning of section 1988. Criterion Club, supra, a decision of the Fifth Circuit, is even more far-reaching. There, the court decreed that the plaintiffs should be deemed to be prevailing parties and thus entitled to attorneys' fees if the district court on remand found that a causal connection existed between the legislative changes that were enacted by the Georgia legislature and the suit brought by the plaintiffs.
 
 
 33
 Thus, BVR's argument that the Sullivan arbitration was not an "action or proceeding under" Title VII misses the point. Sullivan is not seeking attorneys' fees on the ground that she prevailed in the arbitration, but on the ground that by so prevailing, she may be deemed to have prevailed in her Title VII lawsuit because of its impact on, and material contribution to, the ultimate relief she obtained.[8]
 
 III.
 
 34
 Here, the determination that Sullivan's lawsuit was a material factor in bringing about her success in the arbitration is not contested. The record shows that before the EEOC made its determination favorable to Sullivan, the union was uncertain as to the merits of her grievance, and had ceased acting on it for a full year pending the outcome of the EEOC proceedings. App. at 16. The EEOC's decision encouraged the union to bring Sullivan's case to arbitration. Id. at 17. The union's presentation of Sullivan's case at the arbitration was largely based on the information developed by Sullivan's retained counsel during the EEOC and discovery phases of Sullivan's Title VII action. 504 F.Supp. at 583.[9] The record, therefore, is sufficient to establish the necessary causal link between the efforts of Sullivan's counsel in the Title VII proceedings and the successful resolution of Sullivan's claim. We are satisfied that if attorneys' fees compensating counsel for Title VII activities are to be awarded when Title VII rights are vindicated after a full trial in the district court, such fees for the same activities should similarly be awarded when Title VII rights are vindicated through other means, such as, in this case, arbitration.[10]IV.
 
 
 35
 We view our holding in this case as no more than a straightforward application of the principles set forth by the Supreme Court in Maher, supra, and by this court in Ross, supra, and Morrison, supra. Thus, we hold that to qualify for an award of attorneys' fees under section 706(k) for work done by counsel in connection with proceedings before the EEOC and in Title VII litigation in federal court, a plaintiff must satisfy two requirements. First, the plaintiff must be a "prevailing party"; i. e., the plaintiff must essentially succeed in obtaining the relief sought on the merits. Second, the circumstances under which the plaintiff obtained the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.
 
 
 36
 We do not hold that a plaintiff may be awarded attorneys' fees in a Title VII case merely because, without more, the plaintiff succeeded in obtaining relief in a contemporaneous arbitration proceeding. Nor do we hold that attorneys' fees are available where there is merely incidental consultation or collaboration between the attorney in charge of the Title VII case and the attorney in charge of the arbitration.
 
 
 37
 Accordingly, we will vacate the district court's orders which denied plaintiff's motion for partial summary judgment as to her entitlement to attorneys' fees and which dismissed her complaint, and we will remand the case for the determination of a reasonable attorney's fee under section 706(k) of Title VII.
 
 
 38
 ADAMS, Circuit Judge, dissenting.
 
 
 39
 I am not unsympathetic with the argument of the appellant, whose pursuit of her Title VII rights contributed to her eventual success at arbitration, but who, until now, was denied an award of attorney's fees. Nonetheless, I am constrained both by the language of § 706(k) and by the Supreme Court's recent decision in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), to dissent.
 
 
 40
 Section 706(k) provides that attorney's fees may be awarded to the "prevailing party" in "any action or proceeding under" Title VII. In this circuit, the plaintiff[1] is deemed to have prevailed if he or she "essentially succeeds in obtaining the relief" sought on the merits. Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979). Here, no one questions that Sullivan received the relief she was seeking. The obstacle she faces in this appeal-and which, I maintain, she fails to hurdle-is the fact that the relief was granted not in an action or proceeding under Title VII but rather in an arbitration proceeding conducted pursuant to a collective bargaining agreement, not pursuant to the statute.
 
 
 41
 The district court relied on New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), in holding that, because the arbitration proceeding was not an action or proceeding under Title VII, Sullivan was not entitled to an attorney's fee award. In Gaslight Club, the Supreme Court concluded that state proceedings "to which the complainant was referred pursuant to the provisions of Title VII " were "proceedings" under that title for purposes of § 706(k). 447 U.S. at 71, 100 S.Ct. at 2034 (emphasis added). The district court viewed Gaslight Club as controlling, declaring that
 
 
 42
 the reason that Gaslight Club is an authority adverse, rather than favorable, to Sullivan is that Mr. Justice Blackmun's opinion for the Court places great emphasis on the fact that the New York administrative and judicial proceedings were-not just functionally, but formally as well-an integral part of vindication of the Title VII claim. As Mr. Justice Blackmun's opinion carefully explains, Title VII requires exhaustion of state anti-discrimination mechanisms as a predicate to the pursuit of federal enforcement mechanisms where the state processes are deemed adequate to vindicate Title VII's objectives.... Since New York's anti-discrimination mechanisms meet federal standards, New York's administrative/judicial adjudicatory process is part and parcel of an "action or proceeding" under Title VII.
 
 
 43
 504 F.Supp. at 584 (emphasis added).
 
 
 44
 On appeal, Sullivan makes no claim that the arbitration proceeding here was "part and parcel of an 'action or proceeding' under Title VII." She concedes that the arbitration was not "an integral part of vindication of the Title VII claim," but argues, instead, that "her work on the federal case ... brought about the successful arbitration." Because of this, she argues, "she is the prevailing party in her (Title VII) lawsuit." Brief of Appellant at 8. According to Sullivan, the district court was engaged in the wrong inquiry: "The court did not ask whether work in the federal case produced positive results elsewhere; instead it asked only whether the proceedings elsewhere can be deemed to be included in the federal action for fee award purposes." Such an inquiry, she asserts, was irrelevant.
 
 
 45
 The majority accepts this contention by Sullivan. In so doing it relies on a line of cases, unrelated to Gaslight Club, which hold, in effect, that if the plaintiff's Title VII lawsuit is a catalyst in achieving her objective, she is a "prevailing party" for purposes of § 706(k) whether or not the Title VII action proceeded to judgment. E. g., Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). See also Robinson v. Kimbrough, 620 F.2d 468 (5th Cir. 1980); Criterion Club of Albany v. Commissioners of Dougherty County, 594 F.2d 118 (5th Cir. 1979).
 
 
 46
 Unfortunately for the plaintiff, none of the "catalyst" cases are dispositive in the present proceeding. On the whole, they address the situation in which the plaintiff's suit itself motivates the defendants voluntarily to change their conduct. In Morrison v. Ayoob, supra, for example, the plaintiffs filed suit alleging that the district justices of Beaver County, Pennsylvania, had violated the right-to-counsel rule of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). While the action was pending, the defendants voluntarily began to comply with Argersinger. The court held that because the suit filed by the plaintiff was a material factor in bringing about the change in the defendant's conduct, the plaintiff could be deemed the "prevailing party." 627 F.2d at 671. Similarly, in Ross v. Horn, supra, this Court concluded that the chronology of events strongly suggested a causal relationship between the case at bar challenging the procedures used by the New Jersey Department of Labor and Industry to prevent fraud in the receipt of unemployment benefits and the new procedures voluntarily adopted by the Department, which effectively mooted the claims in the case. Judge Higginbotham, for a unanimous panel, stated that "(i)n assessing who is a prevailing party, we look to the substance of the outcome. If the new procedures, which provided much of the relief appellants had initially sought, were implemented as a result of this lawsuit, the appellants were prevailing parties...." 598 F.2d at 1322. Other circuits have announced a similar formulation. See e. g., Robinson v. Kimbrough, supra at 476 ("plaintiffs may recover attorneys' fees if their lawsuit is a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior") (emphasis added).
 
 
 47
 It is important to emphasize the rationale underlying Mitchell, Ross, and the other "catalyst" cases. In such situations, the defendants, faced with the prospect of Title VII litigation, have three choices: they can litigate, risking an unfavorable judgment; they can accede to a consent decree; or they can spontaneously modify their conduct so as to moot the lawsuit. Clearly, if the parties choose to litigate, attorney's fees are available, under § 706(k), to the prevailing party. A similar result ensues if the parties negotiate a settlement in which the plaintiff receives the relief he or she seeks. See Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Mitchell and Ross merely applied § 706(k) to the situation in which the defendants chose not to litigate or to settle the lawsuit, but voluntarily decided, in response to the lawsuit, to alter their discriminatory behavior. The cases are thus consistent with the expression of congressional intent found in the legislative history of the Civil Rights Attorneys' Fees Awards Act of 1976, S.Rep.No.94-1011, 94th Cong., 2d Sess. 5, reprinted in (1976) U.S.Code Cong. & Ad.News 5908, 5912: "(F)or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief " (emphasis added). As Congress recognized, the plaintiff's institution of a lawsuit can evoke several responses from his or her adversary; as long as the plaintiff obtains the relief sought as a result of the lawsuit, no specific form of relief is required.
 
 
 48
 In Sullivan's case, in contrast, the plaintiff obtained relief, not in her Title VII action, but in a separate, formal arbitration proceeding. The Title VII lawsuit did not motivate the employer voluntarily to change its employment practices; apparently, the employer was willing to litigate the claim. If anything, Sullivan's federal claim motivated the union-not the employer-to take action and to press Sullivan's grievance at arbitration. It was the favorable arbitration award, not the filing of the Title VII lawsuit, that compelled the employer to change its conduct.
 
 
 49
 While there may be a causal link here, in my view it is simply too attenuated to warrant a holding, by this Court, that Sullivan prevailed in an "action or proceeding under (Title VII)." It must be stressed that § 706(k) is an exception to the general "American" rule that each party pay its own attorney's fee. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Thus, though we may construe this civil rights statute broadly, we are limited by its terms: "In any action or proceeding under (Title VII) the court ... may allow the prevailing party ... a reasonable attorney's fee...." As Gaslight Club made clear-and as Sullivan concedes-the arbitration proceeding under which Sullivan prevailed is not an "action or proceeding" under Title VII. Nonetheless, the majority today holds that a plaintiff who pursues her rights under both Title VII and her union contract, and who prevails under the latter, is entitled to a counsel fee under § 706(k) of Title VII if the Title VII lawsuit "encourages" the union to fulfill its duty to represent fairly its aggrieved member, and if the union uses the work product of plaintiff's Title VII counsel in successfully pursuing plaintiff's contract claim. In stretching § 706(k) to accommodate this scenario, the majority has, I fear, twisted both the language of the statute and Congress' stated intent in enacting the fee-shifting provision of Title VII.
 
 
 50
 I am not unmindful of what might appear to be unfairness in not awarding plaintiff an attorney's fee. Sullivan's counsel obviously performed valuable services that should not go unrecognized. Nor will they; Sullivan, who obtained the relief she sought in the arbitration, should-like most parties subject to the American rule-pay for her own counsel's efforts. Nor am I unaware of the fact that, under the ruling proposed here, counsel in future Title VII cases may hesitate to provide assistance to unions concurrently processing grievances through arbitration. But the result advocated by the majority is fraught with an even more disturbing implication: the burgeoning of unnecessary litigation in the federal courts. Because of today's ruling, employees aggrieved by discriminatory practices may well file Title VII claims as an adjunct to already-initiated arbitration proceedings simply to ensure the eventual award of a counsel fee.
 
 
 51
 The Supreme Court has admonished us several times in the last several years to use the specific language in statutes enacted by the Congress when such language is, as here, clear on its face.[2] And in Alyeska Pipeline, supra, the Court expressly declared that it is the responsibility of Congress, not of the courts, to expand the availability of attorney's fee awards. From my perspective, the majority today has not simply interpreted a statute; it has rewritten the law.
 
 
 52
 Accordingly, I respectfully dissent.
 
 
 
 [1]
 Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), provides:
 In any action or proceeding under (Title VII) the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs ....
 
 
 [2]
 As the district court noted:
 The presentation of Sullivan's case to the arbitrator was handled by counsel for the (union), but that presentation was based in major part on (1) the information developed by Sullivan's retained counsel during the EEOC phase; (2) the discovery pursued by retained counsel subsequent to the filing in (the district) court of Sullivan's Title VII claim ...; and (3) retained counsel's extensive pre-arbitral hearing collaboration with counsel for the (union).
 
 
 [504]
 F.Supp. at 583. These observations made by the district court are consistent with the union affidavits that we have quoted. BVR's affidavits do not contradict the union's affidavits or these claims
 
 
 [3]
 Sullivan's motion was styled as one for partial summary judgment because she sought only attorneys' fees, all other issues having been mooted by the arbitral award
 
 
 [4]
 As the Supreme Court noted in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980), "Because Congress has cast the Title VII plaintiff in the role of 'a private attorney general,' vindicating a policy 'of the highest priority,' a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances' " (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416-17, 98 S.Ct. 694, 697-98, 54 L.Ed.2d 648 (1978))
 
 
 [5]
 The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which is worded identically to section 706(k), provides:
 In any action or proceeding to enforce a provision of section( ) ... 1983 ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.
 Since § 1988 is similar in purpose and design to § 706(k) of Title VII, see S.Rep.No.94-1011, 94th Cong., 2d Sess. 4, reprinted in (1976) U.S.Code Cong. & Ad.News 5908, 5912; Carey, supra, 447 U.S. at 70 n.9, 100 S.Ct. at 2034, cases interpreting § 1988 can be applied to § 706(k) as well.
 
 
 [6]
 The district court concluded that the suit was a "material factor" in bringing about the relief even though the defendants' conduct might also have been influenced by a letter from the President Judge of the County Court of Common Pleas and an appellate ruling of that court, both of which might have had no connection with the plaintiffs' action. 627 F.2d at 671-72
 
 
 [7]
 Since § 1988 is similar in purpose and design to § 706(k), see note 5 supra, these observations are equally applicable to attorneys' fees under Title VII
 
 
 [8]
 This point is underscored by the fact that Sullivan seeks no attorneys' fees in connection with those activities associated with the arbitration per se, where those activities were not related to Title VII issues
 We reject BVR's argument that for attorneys' fees to be available under a "catalyst theory," "the relief sought and obtained must affect a class or a large section of the public, no(t) merely the individual plaintiff bringing the suit." Appellees' Brief at 19. There is no support in the statute, legislative history, or cases for such a requirement. Section 706(k) expressly applies to "any action or proceeding under (Title VII)" (emphasis added). Cf. Maine v. Thiboutot, 448 U.S. 1, 9, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980) (under § 1988, "(attorneys') fees are available in any § 1983 action"). As the Second Circuit observed in Zarcone v. Perry, 581 F.2d 1039, 1042 (2d Cir. 1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979):
 (Section 1988's) legislative history is clear that in authorizing awards of attorneys' fees to plaintiffs in civil rights actions Congress was concerned with enforcement not only of the civil rights of the public at large and of identifiable groups but also with the rights of individual plaintiffs. Its goal was to remove financial impediments that might preclude or hinder "private citizens," collectively or individually, from being "able to assert their civil rights" (quoting S.Rep.No.94-1011, 94th Cong., 2d Sess. 2, reprinted in (1976) U.S.Code Cong. & Ad.News 5908, 5910).... We therefore reject the view that, to be eligible for shifting of attorneys' fees, the civil rights plaintiff is obligated to show that his action resulted in direct benefits to others, rather than in benefits solely to himself.
 Accord, Milwe v. Cavuoto, 653 F.2d 80, 83 (2d Cir. 1981); Perez v. University of P. R., 600 F.2d 1, 2 (1st Cir. 1979). See also Comment, Attorney's Fees in Damage Actions Under the Civil Rights Attorney's Fees Awards Act of 1976, 47 U.Chi.L.Rev. 332, 343 (1980) ("Congress intended that fees be recoverable in all suits brought under the statutes listed in section 1988-not because of the number of persons affected, but because of the nature of the substantive rights they protect"). We are not persuaded that we should depart from these principles when the "catalyst theory" is invoked. The mere fact that many cases applying the "catalyst theory" have involved broad-based relief does not mean that such broad relief is a requisite for application of the theory. Cf. Gibbs v. Town of Frisco City, Alabama Police Dep't, 626 F.2d 1218, 1221 (5th Cir. 1980) ("This court ... has warned against distinguishing for § 1988 purposes among cases depending on the category of the right vindicated.").
 
 
 [9]
 The parties before this court do not dispute the fact that the efforts of Sullivan's retained counsel in the Title VII action were responsible for Sullivan's success in her arbitration. Rather, BVR contends only that these efforts are not legally compensable under § 706(k). Because BVR does not contest the fact of causal connection, we see little purpose in remanding this case for formal findings as to causal nexus
 
 
 [10]
 We recognize that the district court relied on Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in concluding that attorneys' fees could not be awarded to Sullivan. However, Alexander holds no more than that Title VII rights may be enforced in federal court without regard to the availability of a remedy under a collective bargaining agreement. Alexander does not speak to the issue that we have discussed and resolved here; i. e., the availability of § 706(k) and § 1988 attorneys' fees where there is a causal nexus between the result obtained by the plaintiff and the civil rights lawsuit
 
 
 [1]
 This discussion does not address the question whether a prevailing defendant is entitled to attorney's fees in a case such as the one at hand. See Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)
 
 
 [2]
 See, e. g., United States v. Rutherford, 442 U.S. 544, 555, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979) ("Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy. See Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933). Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied. See TVA v. Hill, (437 U.S. 153, 187, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)).")