689 F.2d 1161
 30 Empl. Prac. Dec. P 33,054
 NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE,
Puerto Rican Civil Rights League, Inc., Older Americans
Coalition, Wilmington United Neighborhoods, Brandywine
Trinity Methodist Church, on behalf of their members and
others similarly situated, and Raymond W. Brown, Maria
Galindez, for herself and as parent and guardian for her
minor children, Reynaldo Galindez and Pedro Galindez,
Milagro Quinones, Denise Smokes, on behalf of themselves and
others similarly situated; and City of Wilmington, a
municipal corporation, Appellants,
v.
The WILMINGTON MEDICAL CENTER, INC., and Crawford H.
Greenwalt, as Chairman of the Board of Trustees,
and Joseph A. Dallas, as Chairman of the
Board of Directors.
 No. 82-1072.
 United States Court of Appeals,
Third Circuit.
 Submitted July 29, 1982.
Decided Sept. 20, 1982.
As Amended Sept. 29, 1982.
Opinion on Denial of Rehearing Nov. 8, 1982.
See 693 F.2d 22.
 
 Alan W. Houseman, Marilyn G. Rose, Washington, D.C., Douglas Shachtman, Wilmington, Del., for appellants.
 William J. Wade, Richards, Layton & Finger, Wilmington, Del., for appellee.
 Before GIBBONS and HUNTER, Circuit Judges and POLLAK,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This appeal arises out of the district court's denial of an application for attorney's fees made pursuant to the Civil Rights Attorneys Fee Awards Act, 42 U.S.C. § 1988, by the NAACP (plaintiffs), after trial on a claim of discrimination by the Wilmington Medical Center, Inc. (WMC). The district court denied the plaintiffs' application because it found that the plaintiffs were not the prevailing party in the litigation. We reverse and remand to the district court for computation of the amount of a fee award.I.
 
 
 2
 The plaintiffs' class action complaint was filed on September 10, 1976 and alleged that WMC violated Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d,[1] and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,[2] by
 
 
 3
 selecting a site for the relocation and removal of certain inpatient and outpatient services which has the effect of excluding persons from participation in, denying them the benefits of, and subjecting them to discrimination and segregation on the basis of race, national origin, or physical handicap.
 
 
 4
 Complaint P 29, App. 27. The Secretary of the United States Department of Health, Education and Welfare (HEW), the Director of the Bureau of Comprehensive Health Planning (BCHP) and the Chairman of the Health Planning Council, Inc. were also named as defendants for having approved the relocation plans under section 1122 of the Social Security Act, 42 U.S.C. § 1320a-1, without regard to compliance with Title VI and section 504.
 
 
 5
 Plan Omega, as WMC's hospital relocation plan was called, involved closing two of WMC's Wilmington hospitals, building a new hospital south of Wilmington (the Southwest Division), and renovating a downtown hospital (the Delaware Division). The plaintiff class, consisting of blacks, Puerto Ricans and handicapped persons, alleged that Plan Omega would result in inadequate access to health care for minorities, diminished quality of health care at the Delaware Division and racial identifiability of the Delaware Division. The plaintiff classes sought declaratory and injunctive relief against Plan Omega.
 
 
 6
 Late in 1976, cross motions for summary judgment were filed by HEW, the state planning agencies and the plaintiffs. HEW also filed a motion to dismiss. WMC was not involved in these motions since it had previously moved for a separate trial on the substantive issue of discrimination.
 
 
 7
 The government agencies argued that plaintiffs had failed to exhaust their administrative remedies with regard to the civil rights claims. Plaintiffs contended that pursuit of administrative remedies would be futile, since HEW lacked experience and resources with which to conduct hospital relocation investigations, and because HEW had taken the position that procedures under section 1122 of the Social Security Act did not contemplate an investigation. See NAACP v. Wilmington Medical Center, Inc. (WMC), 599 F.2d 1247, 1249 n. 6 (3d Cir. 1979).
 
 
 8
 Over plaintiffs' objections, the district court on January 19, 1977 temporarily stayed the action and ordered HEW to conduct a civil rights investigation. NAACP v. WMC, 426 F.Supp. 919, 925 (D. Del. 1977). The district court wrote:
 
 
 9
 In view of the grave doubt created by plaintiffs over (HEW's) capability to perform the appropriate review, (HEW) will be requested to submit ... a detailed plan for processing plaintiffs' complaint.... If it later appears that (HEW) is unable or unwilling to conduct (its) review in a timely fashion ... the Court may find that exhaustion of administrative remedies would be futile....
 
 
 10
 Id.
 
 
 11
 The HEW investigation began on January 19, 1977. On July 5, 1977 HEW's Office for Civil Rights issued a letter which concluded that the proposed relocation plan constituted a prima facie violation of Title VI and section 504 because it would have a disparate impact based on race and handicap and was not "justified by substantial considerations unrelated to race, national origin or handicap."On November 1, 1977, after extensive negotiations between HEW and WMC, they entered into a Contract of Assurances (Supplemental Agreement), in which WMC promised to provide transportation between the Delaware and Southwest Divisions, institute a system to allocate patients to preclude racial identification of the Delaware Division and alter construction plans to comply with requirements of section 504.[3]
 
 
 12
 Plaintiffs filed a second amended complaint challenging the Supplemental Agreement, and claiming that WMC violated Title VI and section 504 by entering into it. The district court on April 7, 1978 held that HEW's decision that the modified Plan Omega complied with Title VI and section 504 was not arbitrary or capricious and therefore did not violate the Administrative Procedure Act, and that plaintiffs had no private cause of action to challenge the agreement. NAACP v. WMC, 453 F.Supp. 280 (D. Del. 1978). In a separate opinion, the district court also rejected plaintiffs' contention that they had a due process right to a hearing before the agency. NAACP v. WMC, 453 F.Supp. 330 (D. Del. 1978).[4] On appeal, this court reversed the district court's private cause of action holding and remanded the case for proceedings on the merits of the discrimination claim. NAACP v. WMC, 599 F.2d 1247 (3d Cir. 1979).[5] On remand the district court dismissed HEW and the state planning agencies as defendants. Plaintiffs filed a third amended complaint on September 4, 1979, which added the City of Wilmington as a party plaintiff and alleged causes of action under the Age Discrimination Act of 1975, 42 U.S.C. § 6102 and for intentional discrimination under Title VI and section 504.
 
 
 13
 A month-long trial without a jury was held. On May 13, 1980, the district court issued its opinion finding that plaintiffs failed to prove discrimination on any of their claims. NAACP v. WMC, 491 F.Supp. 290 (D. Del. 1980). This court, sitting en banc, affirmed. NAACP v. WMC, 657 F.2d 1322 (3d Cir. 1981).
 
 
 14
 After trial, the plaintiffs moved under the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988 (1976), and the attorneys fee provision of the Rehabilitation Act, 29 U.S.C. § 794a(b) for an award of attorney's fees in the amount of $313,390.73.[6] In an opinion and order dated December 21, 1981, the district court denied the application on the ground that plaintiffs were not "prevailing parties" with respect to WMC and rejected plaintiffs' argument that they were entitled to fees for work done in connection with the private right of action issue, because their success on that procedural issue had done "nothing to advance the plaintiffs' claims for relief...." App. at 283. The district court also rejected plaintiffs' contention that, since they filed the lawsuit, they were the "catalyst" which prompted the court to order the HEW investigation which resulted in the Supplemental Agreement. The court found that the catalysts which had resulted in the HEW investigation were the motions to dismiss or alternatively for summary judgment filed by HEW and BCHP. Since WMC neither participated in nor supported these motions, the district court concluded:
 
 
 15
 It would be most illogical to saddle WMC with attorney's fees for the extensive work of plaintiffs in resisting the motion of HEW and BCHP and the Court's direction to HEW to conduct an administrative review when WMC did not participate in the briefing of these issues at all. Thus, it cannot be said that plaintiffs prevailed over WMC on this phase of the litigation.
 
 
 16
 App. at 286-87.
 
 
 17
 The district court also denied fees for work done by plaintiffs in connection with the Supplemental Agreement because the plaintiffs were not parties to the HEW investigation or negotiations over the Supplemental Agreement, and because "any benefit conferred by the Supplemental Agreement were (sic) not casually (sic) related to plaintiffs' efforts, but were (sic) instead the result of HEW and WMC's independent efforts." App. at 288.
 
 
 18
 On January 18, 1982 the NAACP filed its notice of appeal from the district court order denying the fee application.
 
 II.
 
 19
 Fees for Establishing a Private Cause of Action Under Title VI
 
 
 20
 There is no question that a prevailing party can be awarded fees before the conclusion of protracted litigation. Awards of fees pendente lite are specifically approved in the legislative history accompanying the Fee Act. The Senate Report states that fee awards are "especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." Sen. Rep. No. 1011, 94th Cong., 2d Sess. 5, reprinted in 1976 U.S. Code Cong. & Ad. News 5908, 5912 (Senate Report). The House Report likewise states that fees should be allowed after "any order that determines substantial rights of the parties...." H. Rep. No. 1558, 94th Cong., 2d Sess. 8 (House Report). See Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).
 
 
 21
 In Bradley, plaintiffs established defendants' liability in a school desegregation case and then filed a motion seeking further remedies and an award of fees. The district court rejected plaintiffs' proposed remedy, but ultimately awarded them fees for work in connection for their motion for further relief. The Supreme Court affirmed the award of fees, and noted that "entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees...." 416 U.S. at 722, n. 28, 94 S.Ct. at 2021 n. 28.[7]
 
 
 22
 A party who has succeeded on the merits thus is beyond question entitled to fees pendente lite. A party who prevails on a purely procedural issue, however, after Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), is not considered a prevailing party. In Hanrahan, plaintiffs lost numerous discovery motions and after trial, the district court directed a verdict against them. The Seventh Circuit reversed the directed verdict and allowed fees. The Supreme Court, concluding that plaintiffs were not " 'prevailing' parties in the sense intended by 42 U.S.C. § 1988," reversed the award of fees:
 
 
 23
 The Court of Appeals held only that (plaintiffs) were entitled to a trial of their cause. As a practical matter they are in a position no different from that they would have occupied if they had simply defeated the defendants' motion for a directed verdict in the trial court.... As is true of other procedural or evidentiary rulings, these determinations may affect the disposition on the merits, but were themselves not matters on which a party could "prevail" for purposes of shifting his counsel fees to the prevailing party under § 1988.
 
 
 24
 446 U.S. at 758-59, 100 S.Ct. at 1989-1990. See also Swietlowich v. County of Bucks, 620 F.2d 33 (3d Cir. 1980).
 
 
 25
 The plaintiffs' appellate victory on the private cause of action issue falls between Bradley and Hanrahan. Plaintiffs claim that securing a private right of action was not a "purely procedural victory," and argue that Hanrahan and similar cases, e.g., Swietlowich v. County of Bucks, 620 F.2d 33 (3d Cir. 1980) (remand for new trial due to error in jury instructions); Bly v. McLeod, 605 F.2d 134 (4th Cir. 1979), cert. denied, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980) (plaintiff obtained TRO, but no decision on the merits), are distinguishable because those plaintiffs' successes had no "ultimate or independent value." Here, plaintiffs contend, the private cause of action success secured to plaintiffs "substantial rights against WMC." Brief at 47. Plaintiffs rely on Bagby v. Beal, 606 F.2d 411 (3d Cir. 1979), in which a plaintiff filed a section 1983 action for failure to provide her with a hearing prior to suspending her from employment with the state of Pennsylvania. Although plaintiff's suspension was ultimately upheld, this court ordered that she be awarded fees for her success on the due process claims. Plaintiffs' reliance on Bagby v. Beal is misplaced, since in that case the plaintiff's cause of action was based on a violation of due process and she did indeed prevail on that claim.
 
 
 26
 There is no question that appellee essentially succeeded on her due process claims. The district court found in her favor and ordered that she be afforded a hearing. She already has received this hearing and no action taken by this court can change the fact that she has "accomplished the objectives of (her) litigation." Thus appellee is a prevailing party under § 1988.
 
 
 27
 606 F.2d at 415 (citation omitted).
 
 
 28
 In this case, by contrast, plaintiffs neither won a benefit nor vindicated a right which flowed from the merits of their discrimination claim.[8] Since this court's decision that plaintiffs had a private cause of action did "nothing to advance the plaintiff's claim for relief" and left the plaintiffs "no closer to a verdict in (their) favor than (they were) before the ... trial began," these plaintiffs cannot be regarded as having prevailed within the meaning of section 1988. See Swietlowich v. County of Bucks, 620 F.2d at 34. Accordingly, we hold that the district court did not abuse its discretion in refusing to award fees for the plaintiffs' success in securing a private right of action.
 
 III.
 
 29
 Fees for Time Expended on the Supplemental Agreement
 
 
 30
 The plaintiffs' claim that they are entitled to attorneys' fees for their efforts leading up to the Supplemental Agreement presents a different issue, however. It is settled law in this circuit that as long as a plaintiff achieves some of the benefits sought in initiating a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment, the plaintiff can be considered the prevailing party for purposes of a fee award. E.g., Sullivan v. Pennsylvania Department of Labor and Industry, 663 F.2d 443 (3d Cir. 1981), cert. denied, 455 U.S. ----, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); Bagby v. Beal, 606 F.2d 411. Because the district court applied the incorrect standard to plaintiffs' application for fees for time expended on the Supplemental Agreement, we reverse the December 21, 1981 order denying a fee award, and remand this case to the district court.
 
 
 31
 Attorneys' fee awards can be, and often are, awarded to parties who do not ultimately obtain the whole relief sought in the litigation. The House Report approved this approach:
 
 
 32
 The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees.... Similarly, after a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief, such as an injunction, is needed.
 
 
 33
 House Report at 7 (citations omitted). The Senate Report notes that a plaintiff need not win on all issues, but must only prevail on "an important matter in the course of the litigation...." Senate Report at 5, U.S. Code Cong. & Admin. News 1976, p. 5912. Any success achieved by plaintiff need not be achieved in a formal manner; a plaintiff is considered the prevailing party if his "lawsuit acted as a catalyst which prompted (the defendant) to take action" to correct the unlawful practice. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 429 (8th Cir. 1970). See also Thomas v. Honeybrook Mines, Inc., 428 F.2d 981 (3d Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971) (plaintiffs-intervenors ultimately held to lack standing awarded fees for causing suit to be filed); Fisher v. Proctor & Gamble Mfg. Co., 613 F.2d 527 (5th Cir. 1980), cert. denied, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981) (Title VII class members who did not intervene but opposed consent decree awarded fees); Keyes v. School District No. 1, 439 F.Supp. 393 (D. Colo. 1977) (intervenor plaintiff awarded fees although work was performed at remedy stage and remedy proposed by intervenor was not adopted by court).
 
 
 34
 The standard used in this circuit for determining a plaintiff's prevailing party status is whether plaintiff achieved "some of the benefit sought" by the party bringing the suit. Bagby v. Beal, 606 F.2d at 415. See also Ramos v. Koebig, 638 F.2d 838 (5th Cir. 1981); Chicano Police Officers Association v. Stover, 624 F.2d 127 (10th Cir. 1980); Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979), aff'd, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). The fact that a judgment in the district court was ultimately entered in favor of WMC does not make plaintiffs any less the prevailing party. See Sullivan v. Pennsylvania Department of Labor and Industry, 663 F.2d at 447-48; Bagby v. Beal, 606 F.2d at 415. Nor is it dispositive that the plaintiffs never obtained the injunction or declaratory judgment they sought against Plan Omega. Although there would be no question that plaintiffs would be entitled to fees had they obtained such relief, it is clear that as long as they can establish causation between their litigation and "some of the benefits" they sought, see Bagby v. Beal, 606 F.2d at 415, they have prevailed for purposes of section 1988.
 
 A.
 
 35
 Some of the Benefits Sought by the Litigation
 
 
 36
 The complaint filed by plaintiffs sought a remedy for the discriminatory effects of Plan Omega and alleged:
 
 
 37
 19. (WMC) has proposed a plan ... to discontinue most non-emergency out-patient and inpatient services at the Wilmington facility and transfer them to a new facility....
 
 
 38
 21. The proposed hospital site is located in an area which is inaccessible to the vast majority of the minority and handicapped residents of New Castle County....
 
 
 39
 22. The location of the facilities proposed under Plan Omega will have the effect of creating a dual hospital system-a new 800-bed tertiary care facility to serve a low-density suburban, white and affluent population and an older inferior 250-bed facility to serve a high density, inner city minority, handicapped and poorer population. This plan will have the effect of excluding persons from, denying them the benefit of, and otherwise discriminating against and segregating them on the basis of race, national origin, and handicap in a facility receiving federal financial assistance.
 
 
 40
 App. at 25-26. Plaintiffs thus complained of unequal access and quality of care for minorities, the elderly and handicapped, and racial identifiability of the hospitals.
 
 
 41
 After the district court ordered HEW to investigate, HEW found discriminatory effects in the plan. WMC then contractually bound itself to make modifications to remedy the discriminatory impact of Plan Omega. In its en banc opinion on the merits, this court found that WMC adequately justified the amended Plan Omega. This result was based directly on the changes made in the Plan as a result of the Supplemental Agreement:
 
 
 42
 To ensure that Omega would comply with Title VI and the Rehabilitation Act, WMC contracted to make a number of modifications. Because no public transportation to the Southwest site is available, WMC agreed to provide shuttle bus service between the Delaware and the Southwest divisions .... In addition, WMC committed itself to renovate the Delaware plant, devise inpatient service plans for the two branches to prevent racial identifiability at either location, and operate the two facilities on a unitary basis.
 
 
 43
 Upon acceptance of these conditions, HEW withdrew its objections to Omega.
 
 
 44
 NAACP v. WMC, Inc., 657 F.2d 1322, 1325 (3d Cir. 1981) (en banc ). In short, the Supplemental Agreement was found to "overcome all defects in Plan Omega bearing upon the vital issues of transportation, racial identifiability and quality of service." Id. at 1351 (Gibbons, J., dissenting).
 
 
 45
 The plaintiffs achieved some of the benefits they sought in initiating their law suit when the Supplemental Agreement was executed to remedy the prima facie violations of Title VI found by HEW. The district court itself clearly regarded the Supplemental Agreement as a remedy for Plan Omega's discriminatory effects. See, e.g., 453 F.Supp. at 321, 325.
 
 
 46
 The district court further found that the agreement
 
 
 47
 constitutes a binding and specifically enforceable contract ... which obligate(s) WMC to modify and supplement those particular features of Plan Omega which HEW believes will otherwise have a discriminatory effect.
 
 
 48
 NAACP v. WMC, 453 F.Supp. at 280, 292.
 
 
 49
 The district court, in focusing on the fact that after the Supplemental Agreement was executed the plaintiffs amended their complaint to attack the plan, applied the wrong standard in determining that plaintiffs were not prevailing parties. First, the plaintiffs' request for attorneys' fees relates only to challenges to the original plan and not to challenges to the Supplemental Agreement. App. at 175. Plaintiffs did not request, and, indeed cannot recover fees for the time expended on their amended complaints since they in no way prevailed on those claims. But the fact that the relief obtained by virtue of the Supplemental Agreement was, in the plaintiffs' view, inadequate and subject to attack does not deprive plaintiffs of their status as prevailing parties with respect to that relief. Second, the district court rejected the plaintiffs' argument that the terms of the Supplemental Agreement were benefits sought by the plaintiffs in the litigation. WMC makes this same mistake on appeal by arguing that because the plaintiffs did not obtain either an injunction or declaratory judgment against Plan Omega, they did not prevail. The issue is not whether plaintiffs obtained the form or extent of relief they originally requested, but whether the "substance of the litigation's outcome ... provided much of the relief appellants had initially sought." Ross v. Horn, 598 F.2d 1312, 1322 (3d Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980).
 
 
 50
 On this first prong of the "prevailing party" test, we hold that the district court abused its discretion in refusing to find that the plaintiffs prevailed because they achieved some of the benefits originally sought in their litigation.
 
 B.
 
 51
 Plaintiffs as Catalysts for the Supplemental Agreement
 
 
 52
 The district court found that the plaintiffs' efforts were not the material cause of any benefit secured by the Supplemental Agreement, because the mere filing of the complaint did not in itself prompt the court to refer the matter to HEW for an investigation. App. at 288. The district court apparently believed that, because plaintiffs opposed HEW's and BCHP's motion to dismiss the complaint for failure to exhaust administrative remedies, the plaintiffs could not claim the benefits resulting from the HEW investigation.
 
 
 53
 Here again, the district court applied the wrong standard in determining what was the catalyst for the relief obtained through the Supplemental Agreement. In Sullivan v. Pennsylvania Department of Labor and Industry, 663 F.2d 443 (3d Cir. 1981), this court described the causation test applied in this circuit:
 
 
 54
 (W)e have articulated a causal-connection standard whose central inquiry has been variously stated as whether the plaintiff obtained the relief sought "as a result of" the civil rights judicial efforts, or whether these efforts were "a material factor" in obtaining the relief.
 
 
 55
 663 F.2d at 449 (emphasis added) (citation omitted). The critical factor in determining causation is, therefore, whether the relief was implemented as a result of plaintiffs lawsuit. Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980) (per curiam), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); Ross v. Horn, 598 F.2d at 1322.
 
 
 56
 Furthermore, the plaintiffs' lawsuit need not be the sole cause of the ultimate relief. In Morrison v. Ayoob, this court's per curiam opinion said:
 
 
 57
 Where there is more than one cause, the plaintiff is a prevailing party if the action was a material factor in bringing about the defendant's (cessation of arguably illegal conduct). To hold otherwise would be inconsistent with the broad remedial purpose of § 1988 because in many cases causation will hinge on the defendant's motivation. To require some stricter standard of causation would mean that the defendant could hide his true motivation behind what seems a plausible alternate justification.
 
 
 58
 627 F.2d at 671 (emphasis added) (citation omitted).
 
 
 59
 The district court, based on Ross, Morrison and Sullivan, was bound to apply the most expansive definition of causation.[9] If, after filing of suit, WMC had voluntarily amended Plan Omega, there would be little doubt that plaintiffs could be entitled to fees. See, e.g., Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970), cited with approval in Senate Report at 5; House Report at 7. There is no sound reason for departure from this practice simply because the district court ordered the administrative investigation and the changes in Plan Omega were not voluntarily instituted.
 
 
 60
 Because the district court applied the wrong standard in determining whether plaintiffs' efforts were a material factor in bringing about a remedy to the discriminatory effects of Plan Omega, we reverse.
 
 C.
 
 61
 Attorneys' Fees for Administrative Proceedings
 
 
 62
 The fact that the plaintiffs' success occurred as the result of an administrative proceeding is no obstacle to plaintiffs' status as the prevailing party for purposes of 42 U.S.C. § 1988. The language of section 1988 provides for attorneys fees in "any action or proceeding " to enforce Title VI. In New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court decided that the same phrase in Title VII indicated Congress' intent to subject the losing party to attorneys' fees for administrative proceedings:
 
 
 63
 The question presented is whether, in the words of the statute, respondent was the "prevailing party" in an "action or proceeding under this title." An examination of the language and history of the statute, the nature of the proceedings in which respondent participated, and the relationship of those proceedings to Title VII's enforcement mechanisms, together persuade us that Congress clearly intended to authorize awards of attorney's fees to persons in respondent's situation.
 
 
 64
 Congress' use of the broadly inclusive disjunctive phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings.
 
 447 U.S. at 61, 100 S.Ct. at 2030.[10]
 
 65
 The fact that plaintiffs were not parties to the HEW proceeding is similarly no obstacle to an award of fees. In Sullivan v. Pennsylvania Department of Labor and Industry, 663 F.2d 443 (3d Cir. 1981), this court held that where a plaintiff's lawsuit prompted her union to take her case to arbitration against her employer, the plaintiff could be deemed to have prevailed in her Title VII case because of its impact on the relief she obtained in the arbitration proceeding, even though she did not actually prevail in her Title VII case. The plaintiff in Sullivan was not a formal party to the arbitration.
 
 
 66
 Our decisions have made it clear that a plaintiff can receive attorneys' fees even if the causal link between the civil rights suit and the relief obtained is not as direct as when the case is completely adjudicated in the district court itself or formally settled with the defendants in the context of the civil rights proceeding.
 
 
 67
 (T)he union was uncertain as to the merits of her grievance, and had ceased acting on it for a full year pending the outcome of the EEOC proceedings. The EEOC's decision encouraged the union to bring Sullivan's case to arbitration.
 
 
 68
 663 F.2d at 448, 451. See also Thomas v. Honeybrook Mines, Inc., 428 F.2d 981 (3d Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971) (where workers' suit forced union fund trustees to commence action against mine operators which resulted in recovery, workers' counsel fees incurred in bringing about trustees' actions were recoverable).
 
 
 69
 Similarly, in Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 (7th Cir. 1982), the Seventh Circuit held that a Title VII plaintiffs' attorney could be compensated for time spent in efforts to persuade the federal government to debar the employer from receipt of federal contracts under Executive Order 11246.
 
 
 70
 (T)he plaintiffs were carrying out their responsibilities as representatives of the class in doing whatever was necessary to vindicate the rights of the class against the discriminatory employment practices of the defendant. Thus, the district court recognized that the plaintiffs pursued the debarment of the defendant for the purpose of achieving their ultimate goal of relief in the Title VII suit. We do not read Carey as precluding an award of fees for such efforts.
 
 
 71
 (The plaintiffs') efforts to have the defendant debarred from its federal contracts on the basis of the same discrimination charged in the Title VII action were designed to move the Title VII case toward ultimate disposition. This desired effect was achieved, because the threat of debarment on account of discrimination caused the defendant to settle the Title VII action. Thus, the plaintiffs' pursuit of debarment was a service which contributed to the ultimate termination of the Title VII action, and in that sense was within the Title VII action.
 
 
 72
 Id. at 766, 767 (footnotes omitted).
 
 
 73
 The fact that the NAACP plaintiffs were not formal parties to the collateral HEW investigation against WMC is irrelevant. Chrapliwy, 670 F.2d at 767 n. 15. It is also irrelevant that the HEW investigation was not a formal adjudicatory proceeding before the agency. See id; Sullivan; cf. EEOC v. Safeway Stores, Inc., 597 F.2d 251 (10th Cir. 1979) (Title VII proceedings include post-settlement proceedings before special master); Parker v. Califano, 561 F.2d 320, 322 n. 7 (D.C. Cir. 1977) (HEW proceedings without formal hearing).
 
 
 74
 In this circuit, it is established law that plaintiffs must satisfy only two requirements in order to be considered the prevailing party for purposes of a fee award: the plaintiffs must essentially succeed in obtaining some relief on the merits of their claim, and the circumstances under which the plaintiffs obtain that relief must be causally linked to the prosecution of the complaint.[11] Sullivan, 663 F.2d at 452.
 
 IV.
 
 75
 On remand, it will be incumbent on the district court to determine a reasonable fee for "all time reasonably spent," Senate Report at 6 by counsel for the NAACP plaintiffs on those phases of the case which culminated, on November 1, 1977, in the Supplemental Agreement.
 
 V.
 
 76
 The judgment of the district court will be reversed and this case remanded for proceedings consistent with this opinion.
 
 POLLAK, District Judge, concurring:
 
 77
 In Sullivan v. Bureau of Vocational Rehabilitation, 504 F.Supp. 582 (E.D. Pa. 1980), the question presented was whether plaintiff was entitled to an award of attorney's fees. The question arose under the following circumstances: Plaintiff, an employee of Pennsylvania's Bureau of Vocational Rehabilitation, had sought promotion to a higher position. When a male fellow-employee was selected to fill the position, plaintiff asked her union to grieve the failure to promote her, contending that the selection of her fellow-employee was an act of sex discrimination violative of the governing collective bargaining agreement. Shortly thereafter, plaintiff, through her own retained counsel, filed a Title VII charge with the EEOC. When the grievance process produced no results, the union decided to delay further action while the EEOC considered the charge. In due course, the EEOC, assisted by the considerable information assembled by plaintiff's counsel, (a) determined that there was reasonable cause to believe plaintiff's non-promotion violated Title VII, and (b) issued a "right to sue" letter. Plaintiff thereupon filed suit in the district court and, the following month, the union demanded arbitration of plaintiff's claim. The arbitration was handled by union counsel but the union presentation depended heavily not only on the record before the EEOC but on plaintiff's counsel's enterprising pre-trial discovery in the district court. The arbitrator found in the union's favor and plaintiff was ordered reinstated with back pay-a result which mooted all of plaintiff's Title VII prayers for relief except her application for attorney's fees.
 
 
 78
 Sitting in the district court, I concluded that plaintiff was not entitled to attorney's fees for the reason that the "action or proceeding" in which plaintiff had prevailed was not the title VII suit but an unrelated arbitration proceeding. The decision in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), authorizing an award of attorney's fees where a claimant had prevailed "in state administrative and judicial proceedings that Title VII requires federal claimants to invoke," id. at 56, 100 S.Ct. at 2027 (emphasis in original), seemed to me to preclude an award where a claimant had prevailed in a proceeding not part and parcel of the Title VII process.
 
 
 79
 This court reversed, stating that "the crucial question under sections 706(k) and 1988 is not whether a plaintiff actually prevailed in a Title VII or civil rights lawsuit, but whether the plaintiff may be deemed to have prevailed in the civil rights action because of the causal connection between the suit filed and the relief obtained." Sullivan v. Commonwealth of Pennsylvania Department of Labor, 663 F.2d 443, 450 (1981), cert. denied, 455 U.S. ----, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982) (emphasis in original).
 
 
 80
 A case can be made for the proposition that the application for attorney's fees pressed by plaintiffs in the instant case is less warranted than the application sustained in Sullivan. Here, as Judge Hunter shows in paragraphs 7-12 of his opinion, the single element of relief to which plaintiffs can point-namely, the Supplemental Agreement[1]-was perceived by plaintiffs as a woefully inadequate product of an administrative detour mandated by Chief Judge Latchum in the teeth of plaintiffs' strong objections both before and after the fact. On the other hand, unwelcome as the Supplemental Agreement appeared to plaintiffs at the time, it was achieved as a consequence of this litigation. Thus I conclude that this case, like Sullivan, is one in which plaintiffs "may be deemed to have prevailed in the civil rights action because of the causal connection between the suit filed and the relief obtained."[2] For these reasons, I join Judge Gibbons' opinion and the judgment of reversal.
 
 
 81
 JAMES HUNTER, III, Circuit Judge, concurring and dissenting:
 
 
 82
 I concur in the result reached in Part II of the majority opinion, which holds that the district court correctly refused to award attorneys' fees to plaintiffs[1] for establishing a private cause of action under Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973. The majority holds that "the district court did not abuse its discretion in refusing to award fees for the plaintiffs' success in securing a private right of action." Majority op. at 1166. I, however, base my concurrence on the ground that the district court properly found that the plaintiffs were not "prevailing parties" under the operative statutes.
 
 
 83
 I respectfully dissent from Parts III, IV, and V of the majority opinion. In Part III the majority holds that "the district court abused its discretion in refusing to find that the plaintiffs prevailed," majority op. at 1169, in bringing about the Supplemental Agreement. In my view the majority misstates the role of the district court's statutory discretion to award attorneys' fees. Because I find that plaintiffs are not "prevailing parties" in this litigation, I conclude that they are not entitled to attorneys' fees. I would affirm the district court in all respects.
 
 
 84
 The Civil Rights Attorney's Fee Awards Act provides in pertinent part:
 
 
 85
 In any civil action or proceeding to enforce ... title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 86
 42 U.S.C. § 1988 (Supp. IV 1980) (emphasis added).
 
 
 87
 Given the wording of the statute,[2] I conclude that the district judge must reach his decision concerning attorney's fees in two stages. First, he must determine whether plaintiff is a "prevailing party" within the meaning of the statute. If the district judge concludes that plaintiff is not a "prevailing party," he has no discretion to award attorney's fees. Second, once the district judge concludes that plaintiff is a "prevailing party," then and only then can he exercise his discretion in deciding whether to award fees and in determining the amount of any such fees.
 
 
 88
 The majority correctly articulates the legal standard in this circuit for determining who is a "prevailing party" under section 1988. To be a "prevailing party," plaintiff first must show that he "essentially succeeded," Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979), Hughes v. Repko, 578 F.2d 483, 486-87 (3d Cir. 1979), in obtaining some of the benefits that he sought. Second, plaintiff must show a causal connection between his action and the relief obtained. Sullivan v. Pennsylvania Department of Labor and Industries, 663 F.2d 443, 447-51 (3d Cir. 1981), cert. denied, 455 U.S. ----, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). Plaintiff can establish this causal link if he can show that his action was a "material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." Sullivan, 663 F.2d at 452.
 
 
 89
 Under this standard I fully agree with the district court that plaintiffs are not "prevailing parties." That conclusion, therefore, renders the district judge's denial of fees in this case nondiscretionary.
 
 
 90
 This litigation centers around plaintiffs' attempts to prevent the removal and relocation of certain services of the Wilmington Medical Center ("WMC"). Plaintiffs alleged that that relocation ("Plan Omega") would discriminate against them because of their race, national origin, or physical handicap in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In their original complaint, plaintiffs sought a declaratory judgment that the relocation of WMC's facilities would violate Title VI and Section 504 and a permanent injunction prohibiting WMC's relocation. Defendants in the case were WMC and all parties who had approved Plan Omega without regard to its compliance with Title VI and Section 504. Included as defendants were the Secretary of the United States Department of Health, Education and Welfare ("HEW"), the Director of the Bureau of Comprehensive Health Planning ("BCHP"), and the Chairman of the Health Planning Council, Inc.
 
 
 91
 After HEW and BCHP filed various motions to dismiss, the district judge temporarily stayed judicial proceedings and, over plaintiffs' objections, sua sponte ordered HEW to conduct an investigation of plaintiffs' allegations. HEW found that the implementation of Plan Omega would be a prima facie violation of Title VI and Section 504. After that finding, HEW and WMC voluntarily entered into a binding Contract of Assurances ("Supplemental Agreement") which modified Plan Omega to comply with the statutes.
 
 
 92
 Plaintiffs immediately attacked the legality of the Supplemental Agreement. They amended their complaint to state that WMC and HEW had "further violated Title VI and Section 504 by entering into the Supplemental Agreement...." Second Amended Complaint P 40, App. at 63. Plaintiffs amended their claim for relief to request a declaratory judgment that the Supplemental Agreement "fails to correct Plan Omega's violation(s)," Second Amended Complaint P 46(h), App. at 66, and a permanent injunction that "orders the Secretary to rescind his approval of the Supplemental Agreement ...," Second Amended Complaint P 47(i), App. at 68.
 
 
 93
 The litigation proceeded as described in the majority opinion and eventually the district court heard the case on the merits. The district court rejected all of plaintiffs' claims that the Supplemental Agreement was discriminatory and entered judgment on the merits against plaintiffs with costs. NAACP v. WMC, Inc., 491 F.Supp. 290 (D. Del. 1980). This Court sitting en banc affirmed the holding of the district court in its entirety. NAACP v. WMC, Inc., 657 F.2d 1322 (3d Cir. 1981).
 
 
 94
 Plaintiffs now claim that they are entitled to attorneys' fees from WMC for their efforts leading to the Supplemental Agreement. They claim that they are "prevailing parties" pursuant to section 1988 because the Supplemental Agreement affords them some of the "benefits" that they sought and because they were the "catalysts" prompting the HEW investigation and the Agreement.
 
 
 95
 I would hold that plaintiffs can not satisfy either prong of the "prevailing party" test. Plaintiffs never recognized the Supplemental Agreement as affording them "essential success" on their claims. They vehemently opposed the court-ordered investigation which resulted in the Supplemental Agreement. They contested the Agreement in its entirety, with no effort to insulate from their attack the "benefits" which they now claim to have achieved from the Agreement. Indeed, the district court concluded
 
 
 96
 Plaintiffs never wavered through the remainder of this litigation in their contention that Plan Omega as modified by the Supplemental Agreement violated the discrimination statutes involved.... None of the relief sought originally or later was ever granted to plaintiffs.
 
 
 97
 App. at 287-88. I would hold that plaintiffs cannot now, solely for the purpose of obtaining attorneys' fees, claim benefit from an agreement which they have opposed from its inception.[3]
 
 
 98
 Even assuming arguendo that plaintiffs can claim benefit from the Supplemental Agreement, they nonetheless fail to satisfy the second prong of the test. There is simply no causal connection between the plaintiffs' actions and the alleged "benefits." The majority argues for an "expansive" definition of causation, but even the most liberal definition cannot in my view encompass the actions of the plaintiffs in this case.
 
 
 99
 Whatever "benefits" plaintiffs may have derived resulted from the Supplemental Agreement entered into by co-defendants HEW and WMC after an extensive investigation by HEW. That Supplemental Agreement came about despite plaintiffs' opposition to HEW's investigation and despite plaintiffs' efforts to rescind the Agreement in its entirety. Although plaintiffs did have some input in the negotiations between HEW and WMC, the district court concluded "based on its exposure to the facts" that any benefit conferred by the Supplemental Agreement was not causally related to the efforts of plaintiffs. App. at 288.
 
 
 100
 Like the district judge, I cannot hold that plaintiffs "caused" benefits to come into being when their only role was vigorously and consistently to seek the rescission of the Agreement from which those benefits came. Further, I cannot hold, as the majority does, that plaintiffs' mere initiation of the lawsuit constitutes sufficient causation, when plaintiffs opposed every step in the litigation that led to the achievement of the alleged "benefits."[4]
 
 
 101
 Because I conclude that plaintiffs are not "prevailing parties," I would affirm the judgment of the district court in all respects.
 
 
 
 *
 Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 42 U.S.C. § 2000d provides:
 No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 [2]
 29 U.S.C. § 794 provides:
 No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any activity receiving Federal financial assistance.
 
 
 [3]
 On August 16, 1977 the district court decided that HEW was not under a duty to file an environmental impact statement with respect to its review of Plan Omega. NAACP v. WMC, 436 F.Supp. 1194 (D. Del. 1977), aff'd, 584 F.2d 619 (3d Cir. 1978)
 
 
 [4]
 In a separate but related case, the district court rejected a claim that HEW's approval of Plan Omega violated section 1122. Wilmington United Neighborhoods v. HEW, 458 F.Supp. 628 (D. Del. 1978), aff'd, 615 F.2d 112 (3d Cir. 1980)
 
 
 [5]
 The court of appeals reserved the issue under the Administrative Procedure Act, and found no occasion to address the due process question. 599 F.2d at 1250 n.10
 
 
 [6]
 The Civil Rights Attorney's Fee Awards Act provides:
 (I)n any civil action or proceeding to enforce ... Title VI of the Civil Rights Act of 1964, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 42 U.S.C. § 1988 (1976).
 The attorney fee provision of the Rehabilitation Act is similar:
 In any action or proceeding to enforce or charge a violation of a provision (of the Rehabilitation Act) the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 29 U.S.C. § 794a(b).
 
 
 [7]
 Earlier, in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court had held that plaintiffs were entitled to fees immediately after establishing liability
 
 
 [8]
 Cases awarding fees when plaintiffs obtain TROs or preliminary injunctions do not advance plaintiffs' position, since an injunction involves a decision on the merits, and grants relief, albeit temporarily. E.g., Williams v. Alioto, 625 F.2d 845 (9th Cir. 1980), cert. denied, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); Doe v. Marshall, 622 F.2d 118 (5th Cir. 1980), cert. denied, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981); Iranian Students Ass'n v. Edwards, 604 F.2d 352 (5th Cir. 1979)
 
 
 [9]
 This view is consistent with other circuits. E.g., Chicano Police Officers Assoc. v. Stover, 624 F.2d 127, 131 (10th Cir. 1980); Criterion Club v. Board of Commissioners, 594 F.2d 118 (5th Cir. 1979)
 
 
 [10]
 Cases prior to New York Gaslight Club also generally allowed fees for plaintiffs who prevailed through administrative proceedings. See, e.g., Booker v. Brown, 619 F.2d 57 (10th Cir. 1980) (Title VII); Foster v. Boorstin, 561 F.2d 340 (D.C. Cir. 1977) (Title VII)
 
 
 [11]
 Silberman v. Bogle, 683 F.2d 62 (3d Cir. 1982), does not dictate a contrary conclusion. In Silberman, we affirmed the district court's denial of fees for time and effort by counsel in an SEC proceeding. We held that private attorneys should not be awarded fees on an equitable fund theory, where the SEC had affirmative enforcement obligations, unless they established that but for their participation the benefit to the fund resulting from the SEC ruling would not have occurred. Silberman thus establishes a causation test, similar to the one applied in the civil rights context. See Sullivan, 663 F.2d at 452 (no attorneys' fees where plaintiff, without more, succeeds in collateral proceeding or where there is merely incidental involvement of attorney)
 
 
 [1]
 I entirely agree with Judges Gibbons and Hunter that the plaintiffs' success in establishing on appeal the doctrinal validity of their private-cause-of-action theory did not itself constitute a substantive victory warranting an award of attorney's fees
 
 
 [2]
 Since Sullivan was decided by this court only a short time before the entry of the order and opinion here under review, it seems not unlikely that the Sullivan decision was not brought to Chief Judge Latchum's attention
 
 
 [1]
 Party designations will follow those used in the majority opinion
 
 
 [2]
 Similar language in the attorney's fee provision of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b) (Supp. II 1978) governs the award of attorney's fees in cases involving the Rehabilitation Act
 
 
 [3]
 Unlike the present case, the cases cited in the majority opinion in which this Court previously has awarded attorneys' fees have involved clear, uncontested benefits for plaintiffs. For example, in Sullivan v. Pennsylvania Department of Labor and Industries, 663 F.2d 443 (3d Cir. 1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982), plaintiff's Title VII suit prompted her union to arbitrate her grievance. Through the arbitration, plaintiff clearly benefitted in receiving "all the relief she had sought in her Title VII suit except attorneys' fees." Id. at 446. In Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980) (per curiam), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), plaintiffs sued to compel district justices to cease violating indigents' rights to counsel. Plaintiffs clearly benefitted when defendants voluntarily ceased their objectionable practices. In Bagby v. Beal, 606 F.2d 411 (3d Cir. 1979), plaintiff alleged that her employer violated her constitutional rights in suspending her without sufficient notice in advance of her hearing. She clearly benefitted from the district court's order that she be given a new hearing
 
 
 [4]
 Again, in previous cases where this Court has awarded fees, the causal link has been clear. For example, in Sullivan, 663 F.2d at 451, "the determination that (plaintiff's) lawsuit was a material factor in bringing about her success in the arbitration (was) not contested." Uncertain about the strength of plaintiff's claim, her union had declined to take her case to arbitration until spurred on by her success with the EEOC. But see Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980) (where the Court remanded for a determination of the causation issue because it was unclear from the record whether plaintiff's lawsuit caused the New Jersey Department of Labor to modify its procedures for handling unemployment fraud cases)